IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CITY OF PITTSBURGH** *a Pennsylvania Second Class City and Home Rule Municipality, by its treasurer,*<br><br>  Plaintiff,<br><br>  v.<br><br>**UPMC** *a Pennsylvania Nonprofit, Non-Stock Corporation*,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 13-565<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

**CONTI, District Judge.**

**I.      Background**

Pending before the court is the motion to remand to state court (ECF No. 14) and brief in support (ECF No. 15) filed by plaintiff City of Pittsburgh (the "City"), the response in opposition (ECF No. 18) filed by defendant UPMC ("defendant" or "UPMC"), the City's reply (ECF No. 24), and UPMC's sur-reply. (ECF No. 26.) This case, along with another filed at Civil Action Number 13-563 by UPMC against the City and others, arises out of a dispute between the City and UPMC with respect to UPMC's status as an Institution of Purely Public Charity ("IPPC") pursuant to Pennsylvania law.

The present case was filed originally in the Court of Common Pleas of Allegheny County, Pennsylvania. UPMC filed a notice of removal to this court on April 19, 2013, asserting that the claims in the complaint arise under federal law, and are thus subject to this court's jurisdiction pursuant to 28 U.S.C. § 1331. (ECF No. 1.) The City filed an amended complaint

(ECF No. 17) on May 16, 2013, and now moves to have the case remanded to the state court. The City's amended complaint seeks a declaratory judgment pursuant to Pennsylvania law that defendant is not an IPPC exempt from the City's payroll tax and an order that defendant must file quarterly payroll tax returns covering all its operations from March 31, 2007 to the present. (ECF No. 17 ¶ 18.) The court heard oral argument on the present motion on July 2, 2013, and the matter is now ripe for disposition.

II.     **The Parties' Arguments**

The present motion is extensively briefed, and the court will briefly summarize the arguments advanced by both sides.

    A.     **Removal to this court**

UPMC argues in support of removal that two substantial questions of federal law are implicated: first, the City's claim for relief involves resolution of whether UPMC, as a § 501(c)(3) tax exempt entity, owes taxes pursuant to § 511 of the Internal Revenue Code ("IRC")—thus requiring questions of federal law to be addressed; and second, the City's claimed relief requires the dormant Commerce Clause to be addressed because the City is allegedly discriminating against UPMC by selectively enforcing its payroll tax requirements against UPMC, but not against similarly situated "local" § 501(c)(3) charitable organizations. UPMC maintains that these issues of federal law are sufficient to cause the City's claims to "arise under" federal law as required in 28 U.S.C. § 1331.

    B.     **Motion to Remand to State Court**

The City's motion to remand challenges three aspects of UPMC's arguments in support of removal. First, the City asserts that UPMC's removal was not based upon the allegations in

the complaint, but actually upon UPMC's potential defenses to those allegations. Pursuant to the well-pleaded complaint rule, courts must look only to the claims in the complaint, and the City argues that it seeks only relief pursuant to state law—i.e. UPMC's status as an IPPC and its duty to pay a local payroll tax. Second, the City challenges UPMC's argument that the City's claims implicate the dormant Commerce Clause because the party challenging a tax (in this case UPMC) bears the burden of proving an affirmative defense under dormant Commerce Clause analysis. To the extent that UPMC bears the burden of proving that a tax violates the dormant Commerce Clause, the City maintains that its claims do not "arise under" the federal Constitution. Third, the City maintains that its claims do not "arise under" § 511 of the Internal Revenue Code because the amount of tax to be paid is irrelevant; the City argues that the question is whether UPMC is an IPPC under state law and the test set forth by the Pennsylvania Supreme Court in Hospital Utilization Project v. Commonwealth, 487 A.2d 1306 (Pa. 1985) (the "HUP test"). Because the City's claims are based solely on questions of state law, the City argues that this court does not have subject-matter jurisdiction.

      C.     **UPMC's Response**

UPMC responds by arguing that a different standard applies when determining subject-matter jurisdiction over a declaratory judgment action. Instead of looking to the face of the complaint, UPMC argues that "federal subject matter jurisdiction exists in declaratory judgment actions when the facts of a well-pleaded complaint demonstrate that the declaratory judgment defendant could file an action arising under federal law against the declaratory judgment plaintiff." (ECF No. 18 at 5) (citing decisions from several courts of appeals). UPMC maintains that its suit against the City (which raises dormant Commerce Clause and Fourteenth

Amendment claims) satisfies this "coercive action" standard and shows that subject-matter jurisdiction is proper in this court. UPMC reasserts its argument that because the City's payroll tax allows the City to collect taxes from IPPCs to the extent that those institutions are required to pay federal taxes pursuant to § 511 of the Internal Revenue Code, the City's claims "arise under" federal law. Specifically, UPMC notes that "[t]he resolution of a nonprofit hospital's obligations under the Internal Revenue Code is a federal question that vests removal jurisdiction." (ECF No. 18 at 11.)

      **D.**    **The City's Reply**

The City replied to UPMC's response to address the coercive action doctrine argument. The City maintains that the coercive action doctrine does not apply to the present case because it does not fit the typical scenario where a declaratory judgment plaintiff is acting in such a way that it could and should be the coercive action defendant. In the present case, the City argues that the underlying dispute is over a matter of state law—whether UPMC qualifies as an IPPC, and therefore no federal subject-matter jurisdiction exists. The City notes that if the case were allowed to remain in this court, it would essentially allow any defendant being sued pursuant to a state law to assert federal subject-matter jurisdiction merely by claiming that the state law in question violates the federal constitution.

**III.**    **Standard of Review**

  "[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the

4

United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Court of Appeals for the Third Circuit has held that "[i]t is settled that the removal statutes . . . are to be strictly construed against removal and all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (footnote omitted). Courts "must focus on the plaintiff's complaint at the time the petition for removal was filed. . . . It remains the defendant's burden to show the existence and continuance of federal jurisdiction." Id. With respect to suits for declaratory judgment:

> [N]either federal nor state declaratory judgment provisions alter the federal question jurisdiction of the federal district courts. . . . The same principles govern whether a declaratory judgment action falls within federal question subject-matter jurisdiction in removed actions as govern in actions commenced in federal court. Thus, if a federal contention would have arisen only as a defense in an action for affirmative relief, a declaratory judgment action raising that issue is not within the federal court's jurisdiction, and cannot be removed.

14B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3722 (4th ed.).

## IV. Discussion

### A. State Law Basis for the City's Claims

As an initial matter, it is important to understand the state statutory framework underlying the City's claims. At issue is the City's payroll tax ordinance, which is codified as Chapter 258 of the City of Pittsburgh Code. The payroll tax ordinance was enacted pursuant to the taxing authority conferred in section 303 of the Local Tax Enabling Act, 53 PA. STAT. § 6924.303. The Local Tax Enabling Act and the City's payroll tax ordinance both provide that a payroll tax ordinance is levied at the rate of fifty-five hundredths (.55) of one percent on the amount of payroll generated by an employer conducting business activity within the City. Section 258.03(d)

of the payroll tax ordinance provides that IPPCs must calculate the payroll tax which would otherwise be attributable to the City, but only requires those institutions to pay tax on that portion of payroll expenses attributable to business activity for which a tax may be imposed pursuant to § 511 of the IRC, 26 U.S.C. § 511. Section 511 provides that although generally tax exempt, § 501(c)(3) entities shall pay taxes on "the unrelated business taxable income" of those entities. 26 U.S.C. § 511(a)(1).

IPPCs are defined by statute in the Institutions of Purely Public Charity Act, 10 PA. STAT. § 371 et seq. The criteria that must be met to be considered an IPPC are set forth in 10 PA. STAT. § 375. Among the requirements set forth in section 375 are cross-references to an organization's status as a nonprofit organization pursuant to § 501(c)(3). In general, the criteria for IPPCs are: (1) the institution advance a charitable purpose; (2) it operate entirely free from private profit motive; (3) it must donate or render gratuitously a substantial portion of its services; (4) it benefit a substantial and indefinite class of persons who are legitimate subjects of charity; and (5) it relieve the government of some of its burden. 10 PA. STAT. §§ 375(b)-(f); see Hosp. Utilization Project, 487 A.2d at 1317. The crux of the City's claim is that UPMC fails to satisfy some or all of the requirements of an IPPC and should not be exempt from the City's payroll tax ordinance with respect to those employees who work in the City.

### B. Coercive Action Doctrine

The essence of UPMC's opposition to the present motion is that the coercive action doctrine establishes federal subject-matter jurisdiction because UPMC could—and in fact did— file a coercive action based upon the allegations in the City's complaint. In support of this argument, UPMC cites several decisions from eight courts of appeals, but none from the Court of

Appeals for the Third Circuit. Although both sides agree that the coercive action doctrine exists in federal law, the City maintains that it does not apply to this case.

The Supreme Court first recognized the coercive action doctrine in the context of a removal action in Franchise Tax Board of State of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983). The Court noted:

> Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question. . . . . For instance, federal courts have consistently adjudicated suits by alleged patent infringers to declare a patent invalid, on the theory that an infringement suit by the declaratory judgment defendant would raise a federal question over which the federal courts have exclusive jurisdiction.

Franchise Tax Bd., 463 U.S. at 19, n.19.[1] UPMC argues that its suit seeking damages pursuant to alleged violations of the Fourteenth Amendment and the dormant Commerce Clause constitutes a coercive action sufficient to create federal question jurisdiction in the present case.

The decisions cited by UPMC in support of its argument, however, are distinguishable from the present case in that almost all involved plaintiffs asserting declaratory judgment claims that, on their face, involved questions of federal law. See Fina Oil and Chem. Co. v. Ewen, 123 F.3d 1466, 1470 (Fed. Cir. 1997) (patent law); Std. Ins. Co. v. Saklad, 127 F.3d 1179, 1180-81 (9th Cir. 1997) (ERISA benefits); GNB Battery Techs., Inc. v. Gould, Inc., 65 F.3d 615, 619-20 (7th Cir. 1995) (CERCLA liability); Kidder, Peabody & Co., Inc. v. Maxus Energy Corp., 925

---

[1] The Court of Appeals for the Third Circuit has never directly addressed the coercive action doctrine, but in a decision predating Franchise Tax Board, the court appeared to reject the doctrine. See La Chemise Lacoste v. Alligator Co., Inc., 506 F.2d 339, 342-43 (3d Cir. 1974) (rejecting the district court's finding that "[t]o determine whether a declaratory judgment action raises a federal question, the Court must look to the cause of action which the declaratory defendant threatens to assert; if the threatened action involves a claim under federal law, there exists federal question jurisdiction over the declaratory judgment action."). Since this court is bound by the subsequent decision of the Supreme Court in Franchise Tax Board, the court concludes that, although Lacoste has never been explicitly overruled, the holding in Franchise Tax Board implicitly calls its holding into question.

F.2d 556, 562 (2d Cir. 1991) (Securities Exchange Act). Only one decision relied upon by UPMC involved a declaratory judgment claim premised upon state law, and none of the decisions involved cases that had been removed from state court.[2] To the extent that the plaintiff in Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 964-65 (10th Cir. 1996), appeared to raise declaratory judgment claims premised upon state privacy statutes, the court found that a hypothetical coercive claim could be premised upon the Lanham Act. Id. The decision cuts against UPMC, however, to the extent that the court explicitly rejected the district court's finding that declaratory judgment jurisdiction could be premised upon a First Amendment defense. Id. at 965. The takeaway from the decisions cited by UPMC is that the coercive action doctrine requires some degree of congruence between the declaratory judgment actions and the hypothetical (or real) coercive actions in those cases—they both relied upon an underlying federal law.

In the present case, there is no congruence between the City's declaratory judgment action and UPMC's alleged coercive action claim. The coercive action claims that UPMC purports to rely upon—that the HUP test and the Institution of Purely Public Charity Act violate its rights under the Fourteenth Amendment and the dormant Commerce Clause—are defenses to the issues of state law raised by the City in this suit, and are not sufficient to create federal subject-matter jurisdiction. 14B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3722 (4th ed.). UPMC's argument would be more persuasive if the City were

---

[2] UPMC includes a footnote in its brief indicating that "[t]he same logic applies in the context of removal;" none of the decisions UPMC cites were initiated in state court and removed to federal court. (ECF No. 18 at 6 n.2.) This is not an inconsequential point, because the cases relied upon were initially filed in federal court by plaintiffs who had to assert a basis for federal jurisdiction. The City's choice of forum in the present case underscores just the opposite—that the issues in its suit arise under state law.

seeking a declaration that the HUP test and the Institution of Purely Public Charity Act do not violate the dormant Commerce Clause or the Fourteenth Amendment. In that hypothetical situation, UPMC's coercive action—seeking damages for violations of constitutional rights—would likely be sufficient to confer subject-matter jurisdiction. Notably, UPMC cites no court decision in which the coercive action doctrine was applied to extend federal question jurisdiction over a claim premised on state law, where the declaratory judgment defendant merely sought to challenge the constitutionality of the underlying state law and the defendant sought to remove the case to federal court. As indicated above, the court in Cardtoons explicitly rejected declaratory judgment subject-matter jurisdiction premised upon a First Amendment defense. As the City points out, determining that federal jurisdiction extends to such situations would essentially allow defendants to create federal jurisdiction over any suit pursuant to state law merely by asserting the defense that the underlying state law is unconstitutional.

In its petition for removal, UPMC cites Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me., 520 U.S. 564 (1997), presumably as an example of the type of coercive suit based upon the dormant Commerce Clause that could be brought in opposition to the City's claims in the present case. Town of Harrison, however, is inapposite to the present case. The plaintiff in Town of Harrison was the operator of a church camp that was required to pay certain taxes under a state charitable institution statute that it claimed discriminated against camps whose campers predominantly came from out of state. Id. at 567-70. The plaintiff sought a refund of taxes it had already paid because it was not eligible for the allegedly unconstitutional exemption. Id. The Court found that the statute at issue in Town of Harrison violated the dormant Commerce Clause with respect to those camps where campers came primarily from out of state because the

9

heightened tax restricted the camp's abilities to attract out of state campers. Id. at 575-76. Here, UPMC is currently subject to the exemption that it seeks to challenge, which makes no distinction among entities that conduct business both in and outside the state. Indeed, the payroll tax at issue in the present case actually imposes a burden on those local entities that employ people within the City by requiring payment of the payroll tax. To the extent UPMC maintains that the dormant Commerce Clause prohibits the relief sought in this case, that argument is actually a defense to the City's claim that UPMC is not an IPPC.

The City cites City of Chicago v. Comcast Cable Holdings, L.L.C., 384 F.3d 901 (7th Cir. 2004), in support of its argument that UPMC's claims are actually defenses. In City of Chicago, the city brought suit in state court seeking a declaratory judgment that cable operators comply with contracts and city ordinances requiring them to pay remittances to the city for services the operators provided over city-owned cable. Id. at 902-03. Defendant cable operators removed the action to federal court pursuant to §§ 1331 and 1441(b), arguing that a federal law limited the amount of remittances that could be paid, and potentially eliminated any right to those remittances. Id. The defendants argued that construction of the federal law was the only issue to be decided in the litigation. Id. at 903. The court of appeals reversed the district court's finding that the city's complaint "'implicate[d] . . . provisions of the [federal law raised by the defendants].'" Id. The court of appeals concluded the suit did not arise under federal law, and that any implication of the federal law was merely asserted as a defense. Id. at 904. The court cited Franchise Tax Board, but did not analyze the issue pursuant to the coercive claim doctrine.

Although not factually identical to the present case, City of Chicago is instructive because the arguments made by the defendants in that case lacked congruity with respect to the

declaratory judgment claims asserted by the plaintiff city, much like in the present case. Specifically, the state law claims at issue in City of Chicago were subject to challenge by the defendants based upon the asserted federal law, but that assertion amounted to a defense, not an independent coercive action. As discussed above, UPMC's claims do not correspond to the state law claims raised by the City, but instead raise independent constitutional claims that function as a defense, not as inverse claims to those asserted by the City.

Ultimately, UPMC's invocation of the dormant Commerce Clause and the Fourteenth Amendment are defenses to the City's claims that UPMC is no longer an IPPC. Federal subject-matter jurisdiction is, therefore, not appropriate pursuant to the coercive action doctrine.

### C. "Arising Under" Jurisdiction

UPMC argues that the City's claims "arise under" federal law based upon the references to the IRC in the payroll tax ordinance and the IPPC statute. A claim "'arises under' federal law for § 1331 purposes if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd., 463 U.S. 1, 27-28 (1983)). "The most familiar definition of the statutory 'arising under' limitation is Justice Holmes' statement, 'A suit arises under the law that creates the cause of action.'" Franchise Tax Bd., 463 U.S. at 8-9 (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916)). In order to satisfy the arising under requirement, the court must be called upon to resolve "a substantial question of federal law." Id. at 13. "'The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal

subject matter jurisdiction—the implicated federal issue must be *substantial*.'" 13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3564 (3d ed. 2008) (quoting Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1291-92 (11th Cir. 2004)). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986). The requirement of a substantial federal issue is equally relevant to arising under jurisdiction in a removal case. Pursuant to the well-pleaded complaint rule, "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law. . . . '[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" Franchise Tax Bd., 463 U.S. at 10-11 (quoting Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112 (1936)).

The City maintains that its claims arise under state law—specifically, the HUP test as articulated by the Pennsylvania Supreme Court and the Institution of Purely Public Charity Act. UPMC points out, however, that the local payroll tax ordinance makes reference to § 511 of the IRC insofar as charitable nonprofit institutions must calculate how much payroll tax is owed. UPMC also points to several local tax forms that require institutions to identify themselves as § 501(c)(3) organizations as further evidence that the City's claims arise under federal law.

UPMC's argument with respect to § 511 is not persuasive because the determination the City asks the court to make does not involve application of that provision of federal law. Although the payroll tax exemption does require a calculation based upon § 511, the calculation is irrelevant to the present case insofar as it is premised on a court finding that the potential

12

taxpayer institution is an IPPC. As argued by the City at the hearing on the present motion, the issue of tax liability pursuant to § 511 is irrelevant to the issues raised in this case, since the question here is whether UPMC is an IPPC under state law. Thus, the "case starts and ends before we get to [the state law provision incorporating § 511]." (Hr'g Tr. 7/2/2013 at 5.)

A recent decision by the Pennsylvania Supreme Court supports this construction. In Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals, 44 A.3d 3, 9 (Pa. 2012), the court acknowledged that "if [a potential public charity] do[es] not qualify under the HUP test, you never get to the statute [which provides for a tax exemption]." Id. An institution must pass muster as an IPPC under the HUP test before any other statutory tax ramifications are addressed, and if UPMC does not qualify as an IPPC (as argued by the City here), then § 511 is irrelevant. Given that the issues in the present case can be resolved without ever addressing the applicability of § 511, the issue of how much income is subject to taxes under the payroll tax ordinance does not create a substantial federal question sufficient to create subject-matter jurisdiction.

Contrary to UPMC's arguments, its status pursuant to § 501(c)(3) is not challenged in the present case and is not determinative under either the applicable statutory or judicial test. UPMC cites Bobo v. Christus Health, 359 F. Supp. 2d 552 (E.D. Tex. 2005), for the proposition that federal law—specifically § 501(c)(3)—is an essential element to the City's claims. In Bobo, the plaintiff and the court relied upon the "duties and obligations" imposed upon the defendant hospital pursuant to § 501(c)(3) in support of the state law claims in the complaint. The court found that the complaint necessarily required the court to determine "whether Section 501(c)(3) creates an express or implied contract with the United States government and, moreover, whether

13

the plaintiff is entitled to bring suit against the defendant as a third-party beneficiary of the alleged contract." Id. at 556. No such inquiry is required here.

The Pennsylvania Supreme Court's decision in Hospital Utilization Project is instructive in determining whether nonprofit status pursuant to § 501(c)(3) is a necessary element of the HUP test and thus sufficient to create subject-matter jurisdiction. At oral argument, counsel for UPMC argued:

> if [plaintiff has] their way here and go[es] to state court and ha[s] a state court just rule on the HUP test, you have a situation where you can have the state saying, UPMC, you're not an institute [sic] of purely public charity and the federal government under 501(c)(3) saying we are. How inconsistent. How totally inappropriate that you have a state court saying one thing and the federal government saying you are [a] 501(c)(3).

(Hr'g Tr. 7/2/2013 at 12.) Hospital Utilization Project, however, explicitly rejected this concern, holding that "the mere fact that an organization is a non-profit corporation does not mandate that it should be exempt from taxation. . . . Also irrelevant is the argument that HUP was ruled a nonprofit corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code." Hosp. Utilization Project, 487 A.2d at 1316 (internal citations omitted). The HUP test was explicitly created to define charitable organizations pursuant to Pennsylvania constitutional law—not federal tax law. As such, UPMC's argument that federal and state law could be rendered inconsistent is irrelevant under controlling Pennsylvania Supreme Court precedent. Because the issues presented in this case do not require the court to decide a substantial question of federal law, the City's claims do not arise under federal law and the case should be remanded to state court. An appropriate order follows.

## **ORDER**

AND NOW, this 6th day of August, 2013, upon consideration of the motion to remand to state court (ECF No. 14) filed by plaintiff City of Pittsburgh, the response in opposition (ECF No. 18) filed by defendant UPMC, plaintiff's reply (ECF No. 24), defendant's sur-reply (ECF No. 26), and the arguments of counsel presented at the hearing conducted on July 2, 2013, and for the reasons stated in the foregoing memorandum opinion, it is HEREBY ORDERED that plaintiff's motion to remand to state court is GRANTED.

It is FURTHER ORDERED that this case shall be forthwith remanded to the Court of Common Pleas of Allegheny County, Pennsylvania.

It is FURTHER ORDERED that the clerk of court shall mark this case CLOSED.

BY THE COURT:

/s/  Joy Flowers Conti
Joy Flowers Conti
United States District Judge